Entered on Docket
February 26, 2009
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

AHCB I, LLC,                                                No. 08-11321

                                  Debtor(s).
_____/

Memorandum re Plan Confirmation
_____

       This is a single-asset Chapter 11 real property case. The debtor's only significant asset is a partially-finished residential condominium project. The debtor's plan is to obtain local government permission to change the project to a residence hotel and then finish the project with $2.2 million in new financing to be secured by a senior lien on the project. The current senior lienholder, already "under water," is to be bumped to second position.

       The court initially notes that the prospects for obtaining the governmental approval are at best fifty-fifty, and the prospects that the hotel, when and if completed, would be sufficiently profitable to fund the debtor's obligations under the plan are at best one in five. Thus, the debtor's has only a ten percent chance for success. The plan is therefore not confirmable, as § 1129(a)(11) of the Bankruptcy Code requires a finding that confirmation is not likely to be followed by the need for further reorganization.

       However, one other aspect of the plan requires (or at least invites) comment: the treatment of objecting creditor Geneva Leasing Associates, Inc., the secured creditor which the debtor proposes to bump from first to second position.

Case: 08-11321   Doc# 80   Filed: 02/26/09   Entered: 02/26/09 14:49:10   Page 1 of 3

Section 1129(b)(2)(A) of the Code requires confirmation of a plan over the objection of the holder of a secured claim if the secured claim is treated in one of three manners: (i)retention of the lien and deferred payments totaling the value of the lien; (ii) sale with the lien attaching to the proceeds; or (iii) realization of the indubitable equivalent of the secured claim. Since the plan does not call for a sale, the court will discuss only requirements (i) and (iii).

The plan does not meet requirement (i) because Geneva is not retaining its lien. Even if it were retaining its lien, the evidence before the court is that interest would have to be paid at the annual rate of at least 11% in order for deferred payments to have the value of Geneva's current secured claim.[1]

A plan calling for a lien to be "primed" may meet requirement (iii) where there are safeguards in place to insure that the proceeds of the new first position loan will be entirely used to improve the property and the value of the property will be increased dollar-for-dollar. However, in this case only $714,000.00 of the proposed $2.2 million priming loan will be used to directly improve the property and the debtor cannot show "indubitably" that the value of the property will be increased even by that much. Where a creditor is not receiving all its collateral, it is a rare case in which the creditor will have received the indubitable equivalent of its claim. Any such plan is subject to extremely close scrutiny to insure that the creditor will actually receive the indubitable equivalent of its secured claim. *In re Arnold and Baker Farms*, 177 B.R. 648, 660 (9th Cir.BAP 1994).

The debtor argues that the court can disregard the requirements of § 1129(b)(2)(A) and confirm the plan over Geneva's objection because overall the plan is "fair and equitable" to Geneva because it proposes interest at 6% on both Geneva's secured and unsecured claims. The court finds this argument unconvincing for two reasons.

First, there is no provision in § 1129 for the court to "un-bifurcate" a creditor's claims. Unless an under-secured creditor makes a § 1111(b) election (which Geneva has not), it has both secured and

---

[1] The debtor represented that the best rate it could obtain from a new first lender was 10% per annum interest plus three points, for three years.

unsecured claims. In order to confirm a claim over its objection, the secured claim must be treated in accordance with § 1129(b)(2)(A) regardless of how the unsecured claim is treated. There is no basis for the court to consider them together and forgive deficient treatment of the secured claim just because the unsecured claim is treated well.

Second, the court is at a loss to understand how an interest rate of six percent to a second deed of trust holder is fair when the first, for a fraction of the overall value of the property, commands eleven percent. The appropriate rate of interest for § 1129(b)(2)(A) purposes depends on such factors as the estate's circumstances, the security's nature, the reorganization plan's duration and feasibility, and other risks. *Till v. SCS Credit Corp.*, 541 U.S. 465, 478-79, 124 S.Ct. 1951 (2004). If the best possible rate of interest for a first position loan is 11%, then a second position loan commands higher rate, not a lower one, on order to meet the requirements of § 1129(b)(2)(A).

For the foregoing reasons, confirmation will be denied. Counsel for Geneva shall submit an appropriate form of order.

Dated: February 26, 2009

Alan Jaroslovsky
U.S. Bankruptcy Judge

3